UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                              :

UNITED STATES OF AMERICA,          :    Case No. 12-CR-00439 (JG)
                                              :
                                              :    ECF Case
             -against-                        :
                                              :
ROLAND KAUFMANN and                 :
JEAN-PIERRE NEUHAUS,              :
                                              :
           *Defendants.*                 :
                                              :
-----------------------------------------------------------X

### DEFENDANT ROLAND KAUFMANN'S MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

       Defendant Roland Kaufmann submits this memorandum of law in opposition to the government's Motion for a Protective Order Regarding Discovery ("Government's Motion"), filed on July 26, 2012. For the reasons set forth herein, the Government's Motion should be denied.

### FACTS

*Charges*

       On July 5, 2012, an indictment was returned charging Roland Kaufmann and Jean-Pierre Neuhaus with six counts: conspiracy to commit securities fraud and to violate the travel act (18 U.S.C. § 371), securities fraud (18 U.S.C. § 1348), wire fraud (18 U.S.C. § 1343), travel act violation (18 U.S.C. § 1952(a)(3)(A)), money laundering conspiracy (18 U.S.C. § 1956(h)), and money laundering (18 U.S.C. § 1956(a)(2)(A)). These allegations stem from two stock transactions whereby Axius, Inc. ("Axius") – a company where Mr. Kaufmann serves as its Chief Executive Officer – allegedly sold stock to investors through a network of stockbrokers

with the assistance of a New York investment banker, who in actuality was an undercover law enforcement agent with the Federal Bureau of Investigation ("UC"). More specifically, the Indictment alleges that the defendants agreed to defraud Axius investors by bribing brokers and manipulating the share price of Axius common stock. *See* Indictment at ¶ 4.

*Pre-Indictment Discovery*

A criminal complaint was filed in this case on March 8, 2012, and, after his arrest, Mr. Kaufmann was released on bail and is currently under house arrest with electronic monitoring. Thereafter, Mr. Kaufmann agreed five times (on April 5, 2012, May 3, 2012, May 14, 2012, May 21, 2012, and June 26, 2012) to an extension of time for the government to file an indictment. In fact, as recently as July 5, 2012, Mr. Kaufmann made clear that he was willing to agree to an additional extension of time.

Significantly, as early as March 14, 2012 – months before an indictment was returned in this case – the government provided to counsel for Mr. Kaufmann their selection of several audio files consisting of, among other things: i) telephone recordings between the UC, Mr. Kaufmann, and Mr. Neuhaus, and (ii) a recording of an in-person meeting in New York attended by the UC, Mr. Kaufmann, and Mr. Neuhaus. These recordings disclosed the name used by the UC. The government also provided to counsel for Mr. Kaufmann personal items and copies of documents seized from Mr. Kaufmann at the time of his arrest including: a PowerPoint presentation on Axius, a copy of the hard-drive of Mr. Kaufmann's MacBook Air computer, a copy of the files from Mr. Kaufmann's two smartphones, e-mail confirmations regarding Mr. Kaufmann's travel and hotel arrangements for his trip to New York, and publically available materials printed from the Internet. The name of the UC as well as the "investment firm" at which the UC allegedly worked, was also disclosed in this material provided by the government. Notably, during the

four and a half months since we received this information, neither Mr. Kaufmann, nor his counsel, have disclosed the identity of the UC or the name of the investment firm to anyone outside his defense team.

*The UC's Violation of The Attorney General's Guidelines on Federal Bureau of Investigation Undercover Operations and the Laws of Other Countries[1]*

During the FBI investigation leading to this prosecution, the UC disregarded The Attorney General's Guidelines on Federal Bureau of Investigation Undercover Operations[2] ("the Attorney General's Guidelines") when he targeted Mr. Kaufmann. Specifically, during the January 26, 2012 recorded call, when the UC and Mr. Neuhaus first discussed bringing Mr. Kaufmann into their dealings, Mr. Neuhaus informed the UC that Mr. Kaufmann would not engage in anything "illegal" or anything involving "stupidity" and then further explained that Mr. Kaufmann had a long history of doing legitimate business transactions with governments in the Middle East. *See* January 26, 2012 audio recording between the UC and Mr. Neuhaus, currently in the possession of the government.[3] Nonetheless, immediately after hearing Mr. Neuhaus' description of Mr. Kaufmann as a person who follows the law, the UC ignored the Attorney General's Guidelines by targeting Mr. Kaufmann in his sting operation and proposing

---

[1]    Mr. Kaufmann has obtained counsel in Switzerland and in the United Arab Emirates ("UAE") and has been advised that the conduct of the UC constituted criminal offenses in each of these countries.

[2]    Specifically, the Attorney General's Guidelines requires that before an undercover engages in undercover activity involving an inducement to an individual to engage in a crime, the agent must ensure that "[t]here is a reasonable indication that the subject is engaging, has engaged, or is likely to engage in the illegal activity proposed or in similar illegal conduct," or that "[t]he opportunity for illegal activity has been structured so that there is reason to believe that any persons drawn to the opportunity, or brought to it, are predisposed to engage in the contemplated illegal conduct." *See* the Attorney General's Guidelines at 16 (attached as Exhibit A).

[3]    On May 24, 2012 counsel for Mr. Kaufmann was given limited access to three audio files of recorded telephone conversations, including this January 26, 2012 conversation between the UC and Mr. Neuhaus. This access was provided at the request of counsel for Mr. Kaufmann, and the review was conducted at the offices of the Department of Justice and in the presence of Department of Justice prosecutor Justin Goodyear. One of these recordings disclosed the first name of the cooperating witness whose identity the government is seeking to protect. Similar to its handling of the other information, neither Mr. Kaufmann, nor his counsel, have disclosed that information to anyone outside the defense team.

to Mr. Neuhaus that they not make Kaufmann "privy" to the illegal nature of the proposed transaction. *Id*.

Additionally, it has become increasingly clear that the UC either knowingly or recklessly violated the laws of other countries during the course of this investigation. For instance, the UC violated the laws of Switzerland when on January 26, 2012 and February 3, 2012 he called Mr. Neuhaus, who was living in Switzerland, as part of the undercover sting operation. The UC further violated the laws of Switzerland when he illegally recorded these telephone conversations. Similarly, the UC violated the laws of the UAE and Switzerland when he called Mr. Kaufmann and Mr. Neuhaus on February 8, 2012 and February 16, 2012. Mr. Kaufmann and Mr. Neuhaus were located in the UAE and Switzerland respectively at the time of these calls. And, again, the UC violated the laws of these countries when he surreptitiously recorded the conversations.

Since the July 13, 2012 court appearance, the government repeatedly has declined Mr. Kaufmann's requests for: (1) the UC's true name, (2) details regarding other instances when the same UC violated the laws of other countries, the Attorney General's Guidelines, or any other applicable regulations, to include any instances of wrongdoing which occurred during the ongoing investigations, and (3) whether any member of the investigative team ever consulted with the Office of International Affairs of the Department of Justice before placing and recording the telephone calls to Switzerland and the UAE. *See, e.g.*, E-mail from Justin Goodyear to Eric Snyder, dated July 20, 2012 (attached as Exhibit B).

*The Request for a Protective Order*

On July 13, 2012, moments before Mr. Kaufmann was arraigned before this Court, the government provided counsel, for the first time, their proposed Joint Motion for Protective Order

4

Regarding Discovery, accompanied by an earlier, and materially different version of their proposed protective order. The government then proceeded to present the papers before the Court at arraignment. Counsel for Mr. Kaufmann advised the Court and the government that Mr. Kaufmann was not prepared to consent to such a protective order, as it would likely hinder counsel from effectively defending Mr. Kaufmann. *See* July 13, 2012 Transcript at 5:12-7:16 (attached as Exhibit C). Counsel for Mr. Kaufmann outlined how a protective order in this case would impede a meaningful investigation to identify additional material which would be useful in the impeachment of the UC at trial. *Id.* The Court advised the parties to try to come to an agreement.

While the Government's Motion seems to imply that Mr. Kaufmann did not attempt to negotiate with the government on this matter in good faith, that characterization is not accurate. *See* Government's Motion at ¶ 6. In fact, subsequent to the arraignment, counsel for Mr. Kaufmann made attempts to come to an agreement with the government, but the government refused to supply Mr. Kaufmann with any additional information to support the good cause required for such an order, and refused to narrow the language of their proposed overly broad protective order. As stated previously, counsel for Mr. Kaufmann also attempted to negotiate with the government to obtain information about other instances when the UC violated any laws, the Attorney General's Guidelines or other regulations or policies, and explained to the government that the proposed protective order would hamper Mr. Kaufmann's own investigation into locating this important impeachment material. However, the government declined to provide the requested information to Mr. Kaufmann. Without such assurances that Mr. Kaufmann would receive this information, Mr. Kaufmann could not agree to the protective order that was being proposed at that time. While the current proposed order is still too broad, and the

government has failed to demonstrate good cause in their motion, the government did insert some language into the current proposed order (*see* Government's Proposed Protective Order at ¶ E) that would seemingly allow the defense to investigate the UC further, but still with considerable restraints. Interestingly, however, the government failed to provide to Mr. Kaufman a copy of this current proposal before making its present application to the Court.[4]

## ARGUMENT

Federal Rule of Criminal Procedure 16(d)(1) requires the government to show good cause before the issuance of a protective order by a court when such an order is not agreed upon by the defendant. *See* Fed. R. Crim. P 16(d)(1); *see also U.S. v. Annabi*, No. 10 CR 7 (CM), 2010 WL 1253221 at *1 (S.D.N.Y. March 24, 2010) (holding that the government fell substantially short in demonstrating good cause for protective order). Moreover, this finding of good cause "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *See, e.g.*, *U.S. v. Gangi*, No. 97 CR 1215 (DC), 1998 WL 226196 at *2 (S.D.N.Y. May 4, 1998) (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986)).

The government has fallen far short in meeting this standard. Not only is the Government's Motion devoid of any caselaw supporting its application for a protective order, but the government also has failed to show how any particular piece of discovery warrants a protective order in this case. And, the government's leap to have *all* the discovery in the case shielded by a protective order is even more astonishing and unjustifiable.

A.  *The Government has not Shown Good Cause for a Protective Order*

The Government's Motion broadly states that a protective order in this case is necessary

---

[4]  As Mr. Kaufmann repeatedly has informed the government, while he cannot agree to the proposed order as it is currently submitted to the Court, he would consider supporting a more narrowly drafted order if the government can provide sufficient assurances that they will investigate and disclose all instances in which the UC violated the laws of other countries, the Attorney General's Guidelines, or any other applicable policies or regulations.

to "protect sensitive ongoing investigations, protect the physical safety of the undercover agent, protect the privacy interests of uncharged individuals, and ensure fairness for all the defendants." Government's Motion at ¶ 4. These contentions are exactly what the case law in this area counsels against. They are broad, conclusory statements that are not supported by any specific facts in the Government's Motion.

First, it appears from the Government's motion, and from statements made by the prosecutors assigned to this matter, that the main reason for this motion is to protect the ongoing investigations involving the same UC. As stated above, Mr. Kaufmann was more than willing to give the government additional time to indict this case while winding down its ongoing investigations, as he did on five previous occasions. If the government was concerned that its other investigations would be put in jeopardy because of the Rule 16 discovery requirements triggered by returning an indictment in this matter, the government could have waited to seek this indictment until it was able to wind down those other investigations. The government chose to seek an indictment against Mr. Kaufmann when it did; the government should not now be permitted to hide behind that choice in support of its motion for a protective order.

Second, the government fails to make any showing of how the UC could be placed in danger if a protective order is not granted in this case. As the Court is well aware, this case involves alleged financial crimes and there has been no information put forth by the government to indicate that the other investigations involve the type of criminal activity (i.e. violent or organized crime or terrorism) which result in prosecutions in which these types of protective orders are typically sought. Additionally, Mr. Kaufmann has already demonstrated a respect for this information by not revealing the name used by the UC, the name of the UC's firm or the first name of the cooperating witness who introduced Mr. Neuhaus to the UC.

Third, granting a protective order because of claimed risks to witnesses requires a specific showing of risk. *See, e.g.*, *U.S. v. Delatorre*, 438 F. Supp. 2d 892, 901-902 (N.D. Ill. 2006). Once again, the government has provided no facts of any kind in this regard. The Government's Motion gives no specifics as to which witnesses may be put at risk or how any of the information in the discovery would put these alleged witnesses in any sort of danger. The Government's Motion also fails to detail how any legitimate privacy interests could be compromised, or even identify whose privacy interests require protection. They also fail to specify which items of discovery allegedly place these unnamed persons at risk of having their sensitive private information disclosed.

Finally, the government's wish to have this Court grant a protective order in hopes to "ensure fairness for all defendants" is unspecific, nonsensical, not based in any case law, and should be disregarded as mere tricks of language to convince this Court to adopt an ill-based and unsupportable motion. In the end, the Government's Motion has no factual showing at all.

### B. *A Blanket Protective Order of the Type Proposed Here is Inappropriate*

In addition to failing to show cause why any protective order is appropriate with regards to the discovery in this case, the Government's Motion seeks to have *all* discovery produced in this case to be covered under its proposed protective order. In other words, the government does not even attempt to carve out any particular discovery in its motion. As a result, if successful, the government's motion for this proposed protective order would cause the defense to carefully account for all copies of, among other things: publicly available documents such as the Complaint in this case and Form 10-K filed by Axius in 2011; photographs of Mr. Kaufmann's hotel room at the time of his arrest; website printouts of cosmetic products that are

8

readily accessible to the public; and Mr. Kaufmann's own criminal history sheet (or lack thereof).

Simply put, instead of specifically identifying items, or specific recordings which could arguably warrant a protective order, the government instead seeks to throw a sweeping cover over all of the discovery material – even the photographs of the hotel rooms and screenshots of the cosmetic products.[5]   Such a request is not only unjustified and inappropriate, but, if successful, it also jeopardizes Mr. Kaufmann's ability to fully investigate the case and impedes his ability to adequately defend himself.

The Government's Motion seeks to stretch Rule 16(d) beyond recognition, beyond statutory definitions, and beyond case authority.  As such, this Court should deny the government's Motion for a Protective Order Regarding Discovery in its entirety.

Dated: New York, New York
　　　　August 2, 2012

　　　　　　　　　　　　　　　　　　By:　　s/Eric J. Snyder
　　　　　　　　　　　　　　　　　　　　　Eric J. Snyder
　　　　　　　　　　　　　　　　　　　　　KOBRE & KIM LLP
　　　　　　　　　　　　　　　　　　　　　800 Third Avenue
　　　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　　　Tel: + 1 212 488 1200
　　　　　　　　　　　　　　　　　　　　　Fax: + 212 488 1220
　　　　　　　　　　　　　　　　　　　　　E-mail: eric.snyder@kobrekim.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Roland Kaufmann*

---

[5] Additionally, the government's proposed protective order presumably would disallow Mr. Kaufmann from using any of the discovery in this case in defense of his case against the Securities and Exchange Commission, which was also filed on July 5, 2012.