# EXHIBIT C

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------------------x
     UNITED STATES OF AMERICA,
 3                Plaintiff,
                                              12-CR-439
 4                                               (JG)

 5         versus                   United States Courthouse
                                    Brooklyn, N.Y.  11201
 6   JEAN PIERRE NEUHAUS and ROLAND KAUFMANN,

 7                Defendant.
     ------------------------------------------x
 8
                                         July 13, 2012
 9                                       11:30 A.M.

10


11           TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
                   Before HON. JOHN GLEESON,
12                 UNITED STATES DISTRICT JUDGE

13               A P P E A R A N C E S:
     ATTORNEYS FOR GOVERNMENT:
14
     LORETTA LYNCH, ESQ.
15   United States Attorney - Eastern District of New York
     271 Cadman Plaza East
16   Brooklyn, New York  11201
     BY:  JUSTIN GOODYEAR, ESQ.
17        SHANNON C. JONES, ESQ.

18   Assistant United States Attorneys

19
     ATTORNEY FOR DEFENDANT:
20
     KOBRE & KIM, LLP
21   Attorney for the Defendant
     1919 M Street, N.W.
22   Washington, D.C. 20036

23   BY: ERIC J. SNYDER, ESQ.

24

25
```

1           MR. GOODYEAR:  The evidence in this case -- the
2  government has evidence that we're prepared to turn over.  It
3  includes recordings, E-mail messages with the defendants.  But
4  it also touches on sensitive information that relates to
5  ongoing law enforcement operations; and for that reason, we
6  would seek a confidentiality order relating to the evidence.
7  We've provided that to defense counsel, and I'm not sure
8  whether they're prepared to agree to it.
9           THE COURT:  You mean a matter of just keeping the
10 discovery within the defense camp?
11          MR. GOODYEAR:  Exactly.
12          MR. SNYDER:  It goes a little bit beyond that, Your
13 Honor.  And, importantly, we've had a good number of
14 recordings and the information that he wants to protect for
15 about four months, almost exactly four months.  We've not
16 disclosed it.  That was just on the request of the government.
17 We have no interest in blowing up any other investigations.
18 We will not do that.
19          But as to this order which, I just received a few
20 minutes ago and quickly reviewed, it's problematic without
21 some assurances that we're going to be able to fully
22 investigate the FBI agent.  And we've already found instances
23 where he's violated the laws of other countries.  We would
24 need to be able to do that investigation.  So I need some
25 assurances that I would at least get the full name or the real

```
 1   name and the ability to do that investigation without being
 2   tied or restricted in some way of investigating further any
 3   other instances where this FBI agent has violated the laws of
 4   other countries or violated the Attorney General's guidelines.
 5           THE COURT:  You know, it's my fault.  Maybe you
 6   don't fully appreciate how little I know what you're talking
 7   about.
 8           MR. SNYDER:  Okay.  I can explain further.
 9           THE COURT:  Who's the FBI agent?
10           MR. SNYDER:  My client is a Swiss citizen and a
11   resident of the UAE.  Mr. Neuhaus is a Swiss citizen, and I
12   have every reason to believe he was in Switzerland when the
13   agent was telephoning Mr. Neuhaus and when he was telephoning
14   my client.  The government has not indicated whether or not
15   they sought the guidance of the Office of International
16   Affairs; but I've now sought and obtained advisory opinions
17   from lawyers in Switzerland, and I'm getting further
18   information from the UAE that show that he's violated the laws
19   of those countries.  So my point or my proffer --
20           THE COURT:  You mean the agent?
21           MR. SNYDER:  The agent has.
22           THE COURT:  By making contact with your clients?
23           MR. SNYDER:  Absolutely.  Absolutely.  And I can
24   give full information to the Court at whatever time you wish.
25           But I don't want to be tied or restricted now from
```

1    investigating other instances where the agent, whose name I
2    will not mention here, in other cases and other investigations
3    violated other countries' laws.  I think this would be proper
4    material to cross-examine the agent, and I want to be able to
5    investigate that without being tied in any way by a protective
6    order.
7              So my point is this, Your Honor.  I think we can
8    resolve this; and until we do, I -- neither me nor my client
9    will do anything to out the name of the agent, either his true
10   name or his undercover name.  But until we make sure that we
11   have all the assurances we need that we can properly
12   investigate other instances where this agent has committed
13   wrongful conduct, I don't think we can have this joint
14   proposal to Your Honor for a protective order.
15             THE COURT:  Sounds like you certainly don't.
16             MR. SNYDER:  Correct.
17             THE COURT:  And I'm not going to rule now, at the
18   arraignment, on a unilateral request for a protective order.
19   I want you to try to work it out.
20             MR. SNYDER:  We will.
21             THE COURT:  It sounds like there's reasonable
22   interest on both sides that can be reconciled.  Obviously, if
23   you can't work it out, you know where to find me, and we'll
24   litigate it.
25             MR. SNYDER:  I'm sure we'll work it out, Your Honor,